UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| JOHNNY GRAHAM, | ) | 1:08-CV-00881 SMS HC |
| | ) | |
| Petitioner, | ) | ORDER DENYING PETITION FOR WRIT |
| | ) | OF HABEAS CORPUS |
| v. | ) | |
| | ) | ORDER DIRECTING CLERK OF COURT |
| | ) | TO ENTER JUDGMENT AND TERMINATE |
| D. DEXTER, et al., | ) | CASE |
| | ) | |
| Respondents. | ) | ORDER DECLINING ISSUANCE OF |
| | ) | CERTIFICATE OF APPEALABILITY |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. The parties have voluntarily consented to exercise of Magistrate Judge jurisdiction pursuant to 28 U.S.C. § 636(c)(1).

**PROCEDURAL BACKGROUND**

Petitioner is currently in the custody of the California Department of Corrections pursuant to a judgment of the Superior Court of California, County of Kern, following his conviction by jury trial of second degree murder (Cal. Penal Code § 187). (LD 1.[1]) On March 16, 2004, he was sentenced to state prison for an indeterminate term of fifteen years to life. (LD 1.)

Petitioner timely appealed to the California Court of Appeals, Fifth Appellate District. On October 12, 2005, the judgment was affirmed. (LD 1.) He filed a petition for rehearing, but the petition was also denied. (LD 2,3.) Petitioner then filed a petition for review in the California

---

[1] "LD" refers to the documents lodged by Respondent with his answer.

Supreme Court. (LD 4.) On December 21, 2005, the petition was summarily denied. (LD 5.)

Petitioner next filed several habeas petitions in the state courts. He filed a petition in the Kern County Superior Court on September 16, 2006; the petition was denied on January 5, 2007. (LD 6, 7.) He filed a petition in the appellate court on February 21, 2007, and the petition was denied on March 22, 2007. (LD 8, 9.) On June 8, 2007, he filed a petition again in the Kern County Superior Court. (LD 10.) That petition was denied on August 3, 2007. (LD 11.) Finally, on October 18, 2007, he filed a petition in the California Supreme Court. (LD 12.) On April 23, 2008, the petition was denied. (LD 13.)

On June 9, 2008, Petitioner filed the instant federal habeas petition in the Sacramento Division of this Court. On June 23, 2008, the petition was transferred to the Fresno Division and received in this Court. Respondent filed an answer to the petition on January 16, 2009. Petitioner filed a traverse on February 9, 2009.

**FACTUAL BACKGROUND**[2]

On June 14, 2003, Betty Kirkham, a Caucasian female, and her African-American husband, Larry Rich, were at a park in Bakersfield talking to Angelia Morales Florez (Morales), a Hispanic female, and Andrew Burrell, an African-American male. Graham was nearby and Kirkham walked over to ask Graham for a cigarette. Graham responded with "fucking nigger lover, don't ask me for no cigarettes." Graham and Kirkham began arguing. At some point, Kirkham walked away and rejoined the others.

A few minutes after Kirkham had rejoined Rich, Morales, and Burrell, Graham came over, walked around the group, and stated to Rich, "fucking nigger, tell your white bitch not to ask me for no cigarettes." Kirkham pushed Graham and he and Rich argued. Graham took off his belt, began swinging it over his head, and turned to Burrell and stated, "what are you going to do, you fucking nigger?" Burrell held his fists up and said, "put that belt away and we can go with these."

Graham and Burrell started to fight. Graham began using karate kicks on Burrell, causing Burrell to fall to the ground. Graham began kicking Burrell on the upper torso and head. Burrell got up; Graham placed a headlock on Burrell and began punching Burrell in the head. Burrell broke free and began walking away. At that point, Graham wrapped his belt around his fist, grabbed Burrell, and began punching Burrell in the head with the buckle end of the belt. Burrell fell to the ground, unconscious and bleeding. Graham said, "I got me a nigger," put on his belt, and rode away on his bicycle.

An examination of Burrell at Kern Medical Center disclosed that his scalp was lacerated and his skull was indented into his brain. There was blood on the surface of the brain causing pressure. Burrell's injuries were life threatening. Surgeons removed the pieces

---

[2] The factual background is taken from the opinion of the state appellate court and is presumed correct. 28 U.S.C. § 2254(e)(1).

of bone from Burrell's brain, drained the blood to relieve pressure, and covered the area with a titanium mesh. Burrell never regained consciousness. Burrell died July 12, 2003.

(LD 1:2-3.)

## DISCUSSION

**I.  Jurisdiction**

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States.  28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 fn.7 (2000).  Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S. Constitution.  In addition, the conviction challenged arises out of the Kern County Superior Court, which is located within the jurisdiction of this court.  28 U.S.C. § 2254(a); 2241(d).  Accordingly, the Court has jurisdiction over the action.

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997), *cert. denied,* 522 U.S. 1008 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *quoting* Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), *cert. denied,* 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320 (1997) (holding AEDPA only applicable to cases filed after statute's enactment).  The instant petition was filed after the enactment of the AEDPA; thus, it is governed by its provisions.

**II.  Legal Standard of Review**

This Court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).

The instant petition is reviewed under the provisions of the Antiterrorism and Effective Death Penalty Act which became effective on April 24, 1996.  Lockyer v. Andrade,  538 U.S. 63, 70 (2003).  Under the AEDPA, an application for habeas corpus will not be granted unless the adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United

1  States" or "resulted in a decision that was based on an unreasonable determination of the facts in
2  light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d); see Lockyer,
3  538 U.S. at 70-71; see Williams, 529 U.S. at 413.

4      As a threshold matter, this Court must "first decide what constitutes 'clearly established
5  Federal law, as determined by the Supreme Court of the United States.'" Lockyer, 538 U.S. at 71,
6  *quoting* 28 U.S.C. § 2254(d)(1).  In ascertaining what is "clearly established Federal law," this Court
7  must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time
8  of the relevant state-court decision." Id., *quoting* Williams, 592 U.S. at 412. "In other words, 'clearly
9  established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by
10 the Supreme Court at the time the state court renders its decision." Id.

11     Finally, this Court must consider whether the state court's decision was "contrary to, or
12 involved an unreasonable application of, clearly established Federal law." Lockyer, 538 U.S. at 72,
13 *quoting* 28 U.S.C. § 2254(d)(1). "Under the 'contrary to' clause, a federal habeas court may grant the
14 writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a
15 question of law or if the state court decides a case differently than [the] Court has on a set of
16 materially indistinguishable facts." Williams, 529 U.S. at 413; see also Lockyer, 538 U.S. at 72.
17 "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state
18 court identifies the correct governing legal principle from [the] Court's decisions but unreasonably
19 applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413.

20     "[A] federal court may not issue the writ simply because the court concludes in its
21 independent judgment that the relevant state court decision applied clearly established federal law
22 erroneously or incorrectly.  Rather, that application must also be unreasonable." Id. at 411.  A
23 federal habeas court making the "unreasonable application" inquiry should ask whether the state
24 court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

25     Petitioner has the burden of establishing that the decision of the state court is contrary to or
26 involved an unreasonable application of United States Supreme Court precedent. Baylor v. Estelle,
27 94 F.3d 1321, 1325 (9th Cir. 1996).  Although only Supreme Court law is binding on the states,
28 Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court

decision is objectively unreasonable.  See <u>Duhaime v. Ducharme</u>, 200 F.3d 597, 600-01 (9th Cir.1999).

AEDPA requires that we give considerable deference to state court decisions. The state court's factual findings are presumed correct, 28 U.S.C. § 2254(e)(1), and we are bound by a state's interpretation of its own laws. <u>Souch v. Schaivo</u>, 289 F.3d 616, 621 (9th Cir.2002), *cert. denied*, 537 U.S. 859 (2002), *rehearing denied*, 537 U.S. 1149 (2003).

**III.  Review of Petition**

**A.  Ground One - Ineffective Assistance of Trial Counsel**

Petitioner claims he received ineffective assistance of trial counsel in the following instances: 1) failing to adequately investigate and present his defense of self-defense by failing to call crucial witnesses; 2) failing to present an opening statement or an effective closing argument; 3) failing to impeach the State's witnesses; 4) failing to request relevant jury instructions; and 5) failing to counter the State's unreliable eyewitnesses and pathologist.

This claim was presented in the habeas petitions filed in the state courts. (LD 6, 8, 10, 12.) The petitions were denied because Petitioner failed to support his claims with competent documentation. (LD 9, 11.) Further, the courts determined that Petitioner failed to show prejudice, that is, "but for his counsel's failure, there is a probability that the outcome would have been different. <u>In re Viscotti</u>, (1996) 14 Cal.4th 325, 351-352, <u>Strickland v. Washington</u>, (1984) 466 U.S. 668, 694." (LD 11.)

The law governing ineffective assistance of counsel claims is clearly established for the purposes of the AEDPA deference standard set forth in 28 U.S.C. § 2254(d).  <u>Canales v. Roe</u>, 151 F.3d 1226, 1229 (9th Cir. 1998.)  In a petition for writ of habeas corpus alleging ineffective assistance of counsel, the court must consider two factors.  <u>Strickland</u>, 466 U.S. at 687; <u>Lowry v. Lewis</u>, 21 F.3d 344, 346 (9th Cir. 1994).  First, the petitioner must show that counsel's performance was deficient, requiring a showing that counsel made errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment. <u>Strickland</u>, 466 U.S. at 687.  The petitioner must show that counsel's representation fell below an objective standard of reasonableness, and must identify counsel's alleged acts or omissions that were not the result of reasonable professional

judgment considering the circumstances. Id. at 688; United States v. Quintero-Barraza, 78 F.3d 1344, 1348 (9th Cir. 1995). Judicial scrutiny of counsel's performance is highly deferential. A court indulges a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. Strickland, 466 U.S. at 687; Sanders v. Ratelle, 21 F.3d 1446, 1456 (9th Cir.1994).

Second, the petitioner must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result ... would have been different," Strickland, 466 U.S. at 694. Petitioner must show that counsel's errors were so egregious as to deprive defendant of a fair trial, one whose result is reliable. Id. at 688. The court must evaluate whether the entire trial was fundamentally unfair or unreliable because of counsel's ineffectiveness. Id.; Quintero-Barraza, 78 F.3d at 1345; United States v. Palomba, 31 F.3d 1356, 1461 (9th Cir. 1994).

A court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the petitioner as a result of the alleged deficiencies. Strickland, 466 U.S. at 697. Since the defendant must affirmatively prove prejudice, any deficiency that does not result in prejudice must necessarily fail. However, there are certain instances which are legally presumed to result in prejudice, e.g., where there has been an actual or constructive denial of the assistance of counsel or where the State has interfered with counsel's assistance. Id. at 692; United States v. Cronic, 466 U.S., at 659, and n.25 (1984).

Ineffective assistance of counsel claims are analyzed under the "unreasonable application" prong of Williams v. Taylor, 529 U.S. 362 (2000). Weighall v. Middle, 215 F.3d 1058, 1062 (2000). "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [United States Supreme Court] decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413. The habeas corpus applicant bears the burden to show that the state court applied United States Supreme Court precedent in an objectively unreasonable manner. Price v. Vincent, 538 U.S. 634, 640 (2003).

Petitioner first argues counsel failed to adequately investigate and present a defense of self-defense by calling crucial witnesses. He points to various witnesses such as "2 experts" and "3

eyewitnesses." However, he fails to identify these witnesses, what would have been their testimony, and how their testimony would have altered the outcome of the trial. As to the unidentified witnesses, the claim must be rejected as conclusory. Petitioner does reference an exhibit which purports to be a statement from an eyewitness, one Blanca E. Garcia. The statement is undated and is not signed under penalty of perjury. Moreover, the statement does not support the defense of self-defense. As Respondent notes, the trial court instructed the jury on the right of self-defense as follows:

> The right of self-defense is only available to a person who engages in mutual combat if he has done all of the following: He has actually tried in good faith to refuse to continue fighting; he has by words or conduct caused his opponent to be aware as a reasonable person that he wants to stop fighting; three, he has by words or conduct caused his opponent to be aware as a reasonable person that he has stopped fighting; four, he has given his opponent the opportunity to stop fighting. After he's done these four things, he has the right of self-defense if his opponent continues a fight.

(LD 14:586, 19:204.)

There was testimony that the victim broke free of Petitioner and began to walk away. (LD 16:109.) A disinterested witness also testified that at one point the victim waved his hands in a way to signal submission. (LD 16:109.) Nevertheless, the record shows Petitioner then wrapped his hand with a belt and delivered the fatal blow. (LD 16:109.) Garcia offers nothing to dispute this. She states there was mutual combat. She does not state that Petitioner at any time attempted to stop fighting, walk away, or communicate his desire to stop fighting. She does not deny that Petitioner used a belt or brass knuckle to hit the victim. Since she provides nothing to show Petitioner attempted to exercise self-defense, Petitioner fails to demonstrate that the state court unreasonably rejected his claim that counsel committed prejudicial error by failing to call her as a witness.

Petitioner next faults counsel for failing to present an opening statement or an effective closing argument. He claims counsel should have argued Petitioner acted in self-defense, the victim died of AIDS, and the State's witnesses were unreliable. This claim is completely without merit because trial counsel did in fact make these arguments. In her closing remarks, counsel attacked the witnesses as unreliable by discussing the inconsistencies in their testimony. (LD 18:536-551.) She also argued that Petitioner acted in self-defense. (LD 18:543-551.) Petitioner's claim that the victim actually died of AIDS is completely without foundation.

Petitioner also claims counsel failed to request relevant jury instructions, in particular, an instruction as to the absence of ordinarily expected evidence. This claim is also without merit. Although brass knuckles were not seized, Petitioner was arrested wearing a belt and witnesses viewed Petitioner swinging a belt and hitting the victim with the belt. He cannot show that counsel erred in failing to request such an instruction or that the failure to do so was prejudicial.

Finally, he claims counsel failed to counter the State's unreliable eyewitnesses and pathologist with witnesses of his own. This claim is completely speculative and without merit. Petitioner claims the pathologist was unreliable based on prior errors committed in conducting autopsies. Nevertheless, he fails to identify any error committed by the pathologist in his case. Petitioner also fails to state which witnesses would have testified on his behalf and how their testimony would have altered the outcome of the trial.

In sum, Petitioner fails to demonstrate that counsel committed prejudicial error. He cannot demonstrate that the state court clearly erred in its application of controlling federal law. 28 U.S.C. § 2254(d). The claim must be denied.

**B.  Ineffective Assistance of Appellate Counsel**

Petitioner next claims appellate counsel provided ineffective assistance by failing to raise the same claims of ineffective assistance of trial counsel on appeal that he now raises. This claim was also raised and rejected in the state courts on habeas review.

Effective assistance of appellate counsel is guaranteed by the Due Process Clause of the Fourteenth Amendment. Evitts v. Lucey, 469 U.S. 387, 391-405 (1985). Claims of ineffective assistance of appellate counsel are reviewed according to Strickland 's two-pronged test. Miller v. Keeney, 882 F.2d 1428, 1433 (9th Cir.1989); United States v. Birtle, 792 F.2d 846, 847 (9th Cir.1986); see also Penson v. Ohio, 488 U.S. 75 (1988) (holding that where a defendant has been actually or constructively denied the assistance of appellate counsel altogether, the Strickland standard does not apply and prejudice is presumed; the implication is that Strickland does apply where counsel is present but ineffective).

To prevail, Petitioner must show two things. First, he must establish that appellate counsel's deficient performance fell below an objective standard of reasonableness under prevailing

professional norms. Strickland, 466 U.S. at 687-88. Second, Petitioner must establish that he suffered prejudice in that there was a reasonable probability that, but for counsel's unprofessional errors, he would have prevailed on appeal. Id. at 694. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome. Id. The relevant inquiry is not what counsel could have done; rather, it is whether the choices made by counsel were reasonable. Babbitt v. Calderon, 151 F.3d 1170, 1173 (9th Cir.1998). The presumption of reasonableness is even stronger for appellate counsel because he has wider discretion than trial counsel in weeding out weaker issues; doing so is widely recognized as one of the hallmarks of effective appellate assistance. Miller, 882 F.2d at 1434. Appealing every arguable issue would do disservice to the Petitioner because it would draw an appellate judge's attention away from stronger issues and reduce appellate counsel's credibility before the appellate court. Id. Appellate counsel has no constitutional duty to raise every nonfrivolous issue requested by petitioner. Id. at 1434 n.10, *citing,* Jones v. Barnes, 463 U.S. 745, 751-54 (1983).

In this case, Petitioner fails to demonstrate that counsel's performance was deficient or that he suffered any prejudice. As previously noted, the claims of ineffective assistance of trial counsel were either meritless or had no support in the record. Counsel cannot be faulted for failing to raise frivolous issues. Turner v. Calderon, 281 F.3d 851, 872 (9th Cir.2002). In addition, the alleged errors were not prejudicial. Had appellate counsel raised the claims, the result, as shown above, would not have been different.

Petitioner fails to demonstrate that the state court clearly erred in its application of controlling federal law. 28 U.S.C. § 2254(d). The claim must be denied.

**IV.  Certificate of Appealability**

A state prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition, and an appeal is only allowed in certain circumstances. Miller-El v. Cockrell, 123 S.Ct. 1029, 1039 (2003). The controlling statute in determining whether to issue a certificate of appealability is 28 U.S.C. § 2253, which provides as follows:

> (a) In a habeas corpus proceeding or a proceeding under section 2255 before a district judge, the final order shall be subject to review, on appeal, by the court of appeals for the circuit in which the proceeding is held.
>
> (b) There shall be no right of appeal from a final order in a proceeding to test the

validity of a warrant to remove to another district or place for commitment or trial a person charged with a criminal offense against the United States, or to test the validity of such person's detention pending removal proceedings.

 (c) (1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from–

  (A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court; or

  (B) the final order in a proceeding under section 2255.

 (2) A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.

 (3) The certificate of appealability under paragraph (1) shall indicate which specific issue or issues satisfy the showing required by paragraph (2).

If a court denies a petitioner's petition, the court may only issue a certificate of appealability "if jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El, 123 S.Ct. at 1034; Slack v. McDaniel, 529 U.S. 473, 484 (2000).  While the petitioner is not required to prove the merits of his case, he must demonstrate "something more than the absence of frivolity or the existence of mere good faith on his . . . part." Miller-El, 123 S.Ct. at 1040.

In the present case, the Court finds that reasonable jurists would not find the Court's determination that Petitioner is not entitled to federal habeas corpus relief debatable, wrong, or deserving of encouragement to proceed further.  Petitioner has not made the required substantial showing of the denial of a constitutional right.  Accordingly, the Court hereby DECLINES to issue a certificate of appealability.

///
///
///
///
///
///

**ORDER**

Accordingly, IT IS HEREBY ORDERED that:

1. The petition for writ of habeas corpus is DENIED WITH PREJUDICE;

2. The Clerk of the Court is DIRECTED to enter judgment; and

3. The Court DECLINES to issue a certificate of appealability.

IT IS SO ORDERED.

**Dated:   June 15, 2009**                         /s/ Sandra M. Snyder
                                        UNITED STATES MAGISTRATE JUDGE